NEAL M. COHEN (184978) [nmc@viplawgroup.com]
Vista IP Law Group LLP
2040 Main Street, Suite 710
Irvine, California 92614
Tel: (949) 724-1849
Fax: (949) 625-8955

Attorneys for Plaintiff
   SAN PASQUAL CASINO DEVELOPMENT GROUP INC., an enterprise
   fund of the San Pasqual Band of Mission Indians, a
   Federally-Recognized Indian Tribe

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN PASQUAL CASINO DEVELOPMENT GROUP INC., an enterprise fund of the San Pasqual Band of Mission Indians, a Federally-Recognized Indian Tribe,<br><br>            Plaintiff,<br><br>      vs.<br><br>VIEJAS BAND OF KUMEYAAY INDIANS, a Federally-Recognized Indian Tribe d/b/a Viejas Casino<br><br>            Defendant. | Case No. **'11 CV 1983 JAH POR**<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, COPYRIGHT INFRINGEMENT, AND UNFAIR COMPETITION**<br><br>DEMAND FOR JURY TRIAL |

        Plaintiff SAN PASQUAL CASINO DEVELOPMENT GROUP INC.

("SPCDG") alleges as follows against Defendant VIEJAS BAND OF

KUMEYAAY INDIANS d/b/a Viejas Casino ("Viejas"), on personal

knowledge as to Plaintiff's own activities and on information

and belief as to the activities of others, as follows:

1

**NATURE OF THE CASE**

1.   This is an action for common law trademark infringement; common law trade dress infringement; unfair competition under the laws of the United States (codified at 15 U.S.C. § 1117, *et seq.*); unfair competition under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; common law unfair competition; and copyright infringement under the Copyright Act of 1976, as amended (codified at 17 U.S.C. § 101 *et seq.*).

**JURISDICTION AND VENUE**

2.   This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1362.

3.   This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to the provisions of 28 U.S.C. § 1338(b) insofar as the claims are joined with a substantial and related federal claim arising under the trademark laws of the United States.   *See* 15 U.S.C. § 1051 *et seq.*

4.   This Court has personal jurisdiction over Defendant at least because Defendant has substantial contacts in the State of California related to the claims in this action and Defendant

2

engaged in the wrongful acts alleged herein in the State of California.

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a).

## PARTIES

6.    Plaintiff is a wholly-owned, tribally chartered corporation formed under the laws of the San Pasqual Band of Mission Indians, a federally recognized Indian tribe. Plaintiff's headquarters and principal business address are at 16300 Nyemii Pass Road, Valley Center, California 92082.

7.    Defendant is a federally recognized Indian tribe with its headquarters and principal business address at 5000 Willows Road, Alpine, California 91901.

8.    Plaintiff and Defendant each operate competing casinos in the San Diego area.  Plaintiff is responsible for the operation, management and development of Valley View Casino & Hotel ("Valley View"), which is located approximately one hour north of San Diego at 16300 Nyemii Pass Road, Valley Center, California 92082.  Defendant's casino, Viejas Casino, is located approximately forty minutes east of San Diego, at 5000 Willows Road, Alpine, California 91901.  Both Valley View and Viejas Casino are listed as San Diego-area casinos on the City of San Diego's website, www.sandiego.com, along with Barona Casino,

3

1  Harrah's Rincon Casino and Resort, Pala Casino Spa & Resort,

2  Pechanga Resort & Casino, and Sycuan Casino.

3  ## STATEMENT OF FACTS COMMON TO ALL COUNTS

4  ### Plaintiff's Intellectual Property

5

6  9.   Valley View opened on April 18, 2001, marking a

7  milestone in the history of Plaintiff's tribe.  Plaintiff was

8  formed on November 20, 2004 and thereafter assumed exclusive

9  responsibility for the operation, management and development of

10  Valley View.  In the ten years since Valley View opened,

11  Plaintiff and its Tribe have invested significant capital and

12  time to make Valley View the premier gaming destination it is

13  today.  As part of these efforts, Plaintiff has created, sought

14  and obtained protection for, and enforced an impressive

15  intellectual property portfolio, which includes trademarks,

16

17  service marks, trade dress, and copyrights.

18  10.   To succeed in the crowded San Diego-area market,

19  Plaintiff has undertaken several steps to set itself apart from

20  its competitors.  One such effort is Plaintiff's all-you-can-eat

21  lobster buffet, marketed under the mark PINCH YOURSELF since at

22  least September 2009.  Since the campaign began, Plaintiff has

23  used and displayed the PINCH YOURSELF mark in the sale and

24  advertising of its services, which include bar and restaurant

25  services, gaming and casino services, and customer loyalty and

26

27                                    4

28

customer club services.   Plaintiff prominently featured its PINCH YOURSELF mark in a wide variety of advertisements, including: on postcards; on the NBC San Diego website; in various issues of the *San Diego Reader*, *Casino Player* magazine, *Riviera* magazine, and *Inland Empire* magazine; in multiple issues of Plaintiff's *Valley View Casino Newsletter*; on multiple local billboards; and on T-shirts.   As a result of Plaintiff's use of its PINCH YOURSELF mark, Plaintiff's all-you-can-eat lobster buffet has been a resounding success, and consumers have come to recognize PINCH YOURSELF as an indicator of Plaintiff's goods and services.   Plaintiff's PINCH YOURSELF mark is often displayed with a claw "pinching" the mark.

11.  In another step to set itself apart from the competition, Plaintiff created in house a pair of television commercials advertising and promoting Valley View: "Hotel Branding," subtitled "L'Amore Valley View Casino #1" (hereinafter "L'Amore #1 Commercial"); and "VIEW0411," subtitled "L'Amore Valley View Casino #2" (hereinafter "L'Amore #2 Commercial") (collectively, "the L'Amore Commercials").

12.  Both L'Amore Commercials feature a distinctive combination of elements that serve to identify and distinguish Plaintiff's goods and services from those of others and to indicate the source of Plaintiff's goods and services, namely:

a. The use of a catchy piece of music with a driving beat;

b. The complete absence of spoken narration;

c. The use of multiple short vignettes that rapidly change while simultaneously giving the impression of a slow, sweeping panoramic view;

d. The use of white, sans-serif font text moving across the images of the vignettes; and

e. The use of emphasis on particular words that, in conjunction with the underlying images, evoke particular moods and create the sense that Plaintiff's casino is sophisticated, indulgent, luxurious, opulent, and sexy, yet refined (collectively, "the L'Amore Trade Dress").

13. Both L'Amore Commercials feature a unique selection and arrangement of expressive elements, namely:

a. Artistic choices as to the shooting and editing of multiple short vignettes that rapidly change while simultaneously giving the impression of a slow, sweeping panoramic view, the vignettes portraying different aspects of Plaintiff's casino including slot machines, table games, fine dining, gourmet food, and hotel services;

6

b. Artistic choices as to camera angles, particularly as to mixing wide-angled, slowly-sweeping shots with tightly focused, close-up shots;

c. Artistic choices as to lighting, particularly as to using low light in certain vignettes to create a moody, opulent ambience;

d. Selection and arrangement of words in white, san-serif font that scroll across the vignettes, particular words emphasized to create the sense that Plaintiff's casino is sophisticated, indulgent, luxurious, opulent, and sexy, yet refined;

    i. With respect to the L'Amore #1 Commercial, emphasis on the word "insatiable" in conjunction with an image of fine food, conveying the feeling that Plaintiff's casino offers rich, decadent dining experiences;

    ii. With respect to the L'Amore #1 Commercial, emphasis on the word "exciting" in conjunction with an image of a table game, conveying the feeling that Plaintiff's casino offers fun and excitement to its patrons;

e. Artistic choices as to the audio component of the commercials, namely

i. A complete absence of spoken narration;

ii. The use of scrolling text across the vignettes in the place of spoken narration; and

iii. The use of a catchy piece of music with a driving beat;

f. Artistic choices as to pacing such that a sense of excitement is created, with

i. 17 different vignettes shown over the course of the L'Amore #1 Commercial's thirty seconds, each vignette lasting on average 1.76 seconds; and

ii. 18 different vignettes shown over the course of the L'Amore #2 Commercial's thirty seconds, each vignette lasting on average 1.72 seconds;

g. Artistic choices as to the characters portrayed, with couples shown in addition to groups of people and with no particular person, couple, or group of people developed;

i. With respect to the L'Amore #1 commercial, artistic choices as to the portrayal of winning characters, with only female characters clearly shown winning the casino's games; and

h. Artistic choices as to the sequence of the vignettes, namely, a seemingly random intermixing of the

8

different vignettes without any clear, natural progression in storyline (collectively, "the L'Amore Expressive Elements").

14. Plaintiff's L'Amore #1 Commercial first aired in San Diego, Orange, Los Angeles, Riverside, Ventura, Santa Barbara, and San Bernandino Counties (collectively, "the Southern California Market") on February 7, 2011. Plaintiff's L'Amore #2 Commercial first aired in the Southern California Market on April 11, 2011. Since their first airings, both commercials have run thousands of times. As of the filing of this Complaint, both commercials are still airing in the Southern California Market. Additionally, both L'Amore Commercials have been posted on Plaintiff's YouTube Channel, "VVCasinoHotel," since late April 2011.

15. Plaintiff's efforts to set itself apart, including through the use of its PINCH YOURSELF mark and its L'Amore Commercials, have paid off: In its "2011 Best of Gaming" issue, *Casino Player* Magazine recognized Plaintiff as the Best Overall Gaming Resort in California, and awarded Plaintiff its sixth consecutive Best Buffet title for Plaintiff's all-you-can-eat lobster buffet.

16. On August 10, 2011, Plaintiff applied for federal trademark registration of its PINCH YOURSELF mark: (a) Ser. No.

9

85/394,831 for customer loyalty services and customer club services, for commercial, promotional and/or advertising purposes, first used in commerce in connection with the identified services at least as early as December 2010; (b) Ser. No. 85/394,805 for restaurant; hotel, bar and restaurant services; hotel accommodation services; hotel services for preferred customers; hotel, restaurant and catering services; bar and restaurant services; cafe and restaurant services; and restaurant services, first used in commerce in connection with the identified services at least as early as September 2009; and (c) Ser. No. 85/394,796 for entertainment services, namely, casino gaming; gaming services in the nature of casino gaming; casino services; and entertainment services, namely, live appearances by a professional entertainer, first used in commerce in connection with the identified services at least as early as September 2009. As of the filing of this Complaint, Plaintiff's trademark applications remain pending.

17. Also on August 10, 2011, Plaintiff sent the following applications for copyright registration, along with a deposit and fee, to the United States Copyright Office: (a) Case # 1-646798370 for the L'Amore #1 commercial, and (b) Case #1-646798471 for the L'Amore #2 commercial. Plaintiff's applications were both received by the Copyright Office on or

about August 10, 2011.  As of the filing of this Complaint, Plaintiff's copyright applications remain pending.

### Defendant's Infringement and Misappropriation of Plaintiff's Intellectual Property

18.  By letter dated February 17, 2011, Plaintiff contacted Defendant regarding unauthorized use of one of Plaintiff's registered trademarks by Defendant.  By email dated March 1, 2011, Defendant's then General Manager indicated that Defendant would cease use of the mark.

19.  On or about August 3, 2011, Defendant launched an advertising campaign whereby Defendant marketed an all-you-can-eat snow crab buffet under the mark PINCH YOURSELF.  Defendant announced its campaign via press releases posted on several national websites, including www.reuters.com, www.cnbc.com, www.businesswire.com,              finance.yahoo.com,           and www.allbusiness.com, as well as through several postings on Defendant's page on www.facebook.com and Defendant's own website, www.viejas.com.  Defendant also created a commercial for its campaign that prominently features the PINCH YOURSELF mark, which was posted on at least Defendant's www.facebook.com page.  In several instances, Defendant uses PINCH YOURSELF with an image of a claw "pinching" the mark.

20.  Sometime around July 16, 2011, Defendant first aired a television commercial, with the opening verbiage "Are you ready

11

to play?", advertising and promoting its casino (hereinafter "the Viejas Commercial").

21.  The Viejas Commercial features the same or a similar combination of elements as the L'Amore Trade Dress, namely:

    a. The use of a catchy piece of music with a driving beat;

    b. A complete absence of spoken narration;

    c. The use of multiple short vignettes that rapidly change while simultaneously giving the impression of a slow, sweeping panoramic view;

    d. The use of white, sans-serif font text moving across the images of the vignettes; and

    e. The use of emphasis on particular words that, in conjunction with the underlying images, evokes particular moods and creates the sense that Defendant's casino is sophisticated, indulgent, luxurious, opulent, and sexy.

22.  The Viejas Commercial also features a substantially similar selection and arrangement of expressive elements as those seen in the L'Amore Commercials, namely:

    a. Artistic choices as to the shooting and editing of multiple short vignettes that rapidly change while simultaneously giving the impression of a slow,

sweeping panoramic view, the vignettes portraying different aspects of Defendant's casino including slot machines, table games, fine dining, and gourmet food, the vignettes further giving the impression that Defendant offers hotel services through the use of two ambiguous scenes showing a card that could be mistaken for a hotel room key card even though Defendant does not offer hotel services;

b. Artistic choices as to camera angles, particularly as to mixing wide-angled, slowly-sweeping shots with tightly focused, close-up shots;

c. Artistic choices as to lighting, particularly as to using low light in certain vignettes to create a moody, opulent ambience;

d. Selection and arrangement of words in white, san-serif font that scroll across the vignettes, particular words emphasized to create the sense that Defendant's casino is sophisticated, indulgent, luxurious, opulent, and sexy;

    i. In substantial similarity to the L'Amore #1 Commercial, emphasis on the word "indulge" in conjunction with an image of fine food, conveying

13

the feeling that Defendant's casino offers rich, decadent dining experiences;

    ii. In substantial similarity to the L'Amore #1 Commercial, emphasis on the word "excitement" in conjunction with an image of a table game, conveying the feeling that Defendant's casino offers fun and excitement to its patrons;

e. Artistic choices as to the audio component of the Viejas Commercial, namely

    i. A complete absence of spoken narration;

    ii. The use of scrolling text across the vignettes in the place of spoken narration; and

    iii. The use of a catchy piece of music with a driving beat;

f. Artistic choices as to pacing such that a sense of excitement is created, with 19 different vignettes shown over the course of the Viejas Commercial's thirty seconds, each vignette lasting on average 1.67 seconds;

g. Artistic choices as to the characters portrayed, with couples shown in addition to groups of people, with no particular person, couple, or group of people

14

developed, and with only female characters clearly shown winning the casino's games; and

h. Artistic choices as to the sequence of the vignettes, namely, a seemingly random intermixing of the different vignettes without any clear natural progression in storyline.

23. Defendant's Viejas Commercial aired approximately five months after the L'Amore #1 Commercial first aired, and approximately three months after the L'Amore #2 Commercial first aired. The Viejas Commercial has aired in at least the Southern California Market.

24. Between August 10, 2011, and August 17, 2011, Plaintiff sent letters to Defendant regarding Defendant's infringement and misappropriation of the PINCH YOURSELF mark and the L'Amore Commercials and requesting that Defendant cease its PINCH YOURSELF campaign and pull the Viejas Commercial. Defendant refused to do so.

25. Because of Defendant's apparent concerted effort to continue a pattern of copying and infringing Plaintiff's intellectual property for the purpose of trading off Plaintiff's goodwill, this Complaint necessarily follows.

15

## COUNT 1

**Common Law Trademark Infringement of the PINCH YOURSELF Mark**

26. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 25 of this Complaint as if fully set forth herein.

27. Plaintiff has continuously used the PINCH YOURSELF mark in commerce in connection with Plaintiff's services, including in connection with Plaintiff's all-you-can-eat lobster buffet, since at least as early as September 2009 and, accordingly, has established common law trademark rights in the PINCH YOURSELF mark.

28. Defendant's unauthorized use in commerce of the PINCH YOURSELF mark in association with Defendant's all-you-can-eat snow crab buffet constitutes infringement of Plaintiff's common law trademark rights, misappropriates the valuable goodwill developed by Plaintiff in the PINCH YOURSELF mark, and is likely to cause confusion among the relevant consuming public.

29. Defendant was, or should have been, aware of Plaintiff's use of and corresponding rights in the PINCH YOURSELF mark. Defendant's acts aforesaid, including using names, terms, and/or marks that are identical or, at least, confusingly similar to Plaintiff's PINCH YOURSELF mark for identical or substantially similar goods and services,

16

constitute willful infringement of Plaintiff's rights in the PINCH YOURSELF mark.

30. Defendant's acts of willful infringement of Plaintiff's rights in the PINCH YOURSELF mark have caused and, unless restrained, will continue to cause great and irreparable injury to Plaintiff, Plaintiff's business, and to the goodwill and reputation of Plaintiff in an amount that cannot be ascertained at this time, leaving Plaintiff no adequate remedy at law.

31. Defendant's acts are the proximate cause of such injury and damage.

32. By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendant, and anyone acting in concert with Defendant, to restrain further acts of infringement of Plaintiff's rights and, after trial, to recover any damages proven to have been caused by reason of Defendant's aforesaid acts of infringement and any enhanced damages justified by the willful and intentional nature of such acts.

17

## **COUNT TWO**

**Federal Unfair Competition with Respect to the PINCH YOURSELF Mark**
**(15 U.S.C. § 1125)**

33.  Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34.  By its knowing and intentional unauthorized imitation, adoption, and use of Plaintiff's PINCH YOURSELF mark and/or marks which are confusingly similar to Plaintiff's PINCH YOURSELF mark in association with Defendant's goods and services, Defendant has and continues to falsely designate its goods and services as being derived or affiliated with those of the Plaintiff.

35.  Defendant's use of the PINCH YOURSELF mark is likely to cause and/or has caused relevant consumers to mistakenly believe that Defendant has an affiliation with Plaintiff, that Defendant's business is sponsored or approved by Plaintiff, or that Defendant is otherwise associated with or has obtained permission from Plaintiff to use the PINCH YOURSELF mark in connection with the sale of Defendant's goods and services.

36.  By engaging in the unauthorized activities described above, Defendant has made, and continues to make, false, deceptive, and misleading statements constituting false representations and false advertising made in connection with

18

the sale of goods or services distributed in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Furthermore, in view of the notices provided to Defendant by the acts of Plaintiff, such activities were, and remain, willful and intentional.

37. Defendant's willful and intentional acts of unfair competition, false advertising, and false designation of origin, have caused and are causing great and irreparable injury and damage to Plaintiff's business and its goodwill and reputation in an amount that cannot be ascertained at this time and, unless preliminarily and permanently restrained, will cause further irreparable injury and damage, leaving Plaintiff with no adequate remedy at law.

38. By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendant, and anyone acting in concert with Defendant, to restrain further acts of unfair competition, false advertising, and false designation of origin and, after trial, to recover any damages proven to have been caused by reason of Defendant's aforesaid acts, and to recover enhanced damages based on Defendant's willful, intentional, and/or grossly negligent acts.

19

## COUNT THREE

**Statutory Unfair Competition with Respect to the PINCH YOURSELF Mark**
**(Cal. Bus. & Prof. Code § 17200)**

39. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. Through its unauthorized use of the PINCH YOURSELF mark, as well as by continuing to engage in a willful and concerted effort to trade on Plaintiff's goodwill copying and/or imitating Plaintiff's PINCH YOURSELF mark, Defendant has engaged in unlawful and unfair business acts or practices in violation of Cal. Bus. & Prof. Code § 17200.

41. Defendant was, or should have been, aware of Plaintiff's use of and corresponding rights in the PINCH YOURSELF mark. Defendant's acts aforesaid constitute willful and intentional violation of Cal. Bus. & Prof. Code § 17200.

42. Defendant's willful and intentional violation of Cal. Bus. & Prof. Code § 17200 has caused and is causing great and irreparable injury and damage to Plaintiff's business and its goodwill and reputation in an amount that cannot be ascertained at this time and, unless preliminarily and permanently restrained, will cause further irreparable injury and damage, leaving Plaintiff with no adequate remedy at law.

20

43. Defendant's acts are the proximate cause of such injury and damage.

44. By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendant, and anyone acting in concert with Defendant, to restrain further violation of Cal. Bus. & Prof. Code § 17200.

## COUNT FOUR

### Common Law Infringement of the L'Amore Trade Dress

45. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. Plaintiff's L'Amore Trade Dress is non-functional and is inherently distinctive or has acquired secondary meaning through its extensive, exclusive use by Plaintiff and its association by purchasers with Plaintiff's goods and services.

47. Plaintiff has continuously used the L'Amore Trade Dress in commerce in connection with Plaintiff's goods and services since at least as early as February 7, 2011, and, accordingly, has established common law trade dress rights in the L'Amore Trade Dress.

48. Defendant's unauthorized use in commerce of the L'Amore Trade Dress via Defendant's Viejas commercial constitutes infringement of Plaintiff's common law trade dress

21

rights, misappropriates the valuable goodwill developed by Plaintiff in the L'Amore Trade Dress, and is likely to cause confusion among the relevant consuming public.

49. Defendant was, or should have been, aware of Plaintiff's use of and corresponding rights in the L'Amore Trade Dress. Defendant's acts aforesaid, including incorporating trade dress in its Viejas commercial that is identical or, at least, confusingly similar to Plaintiff's L'Amore Trade Dress for identical or substantially similar goods and services, constitutes willful infringement of Plaintiff's rights in the L'Amore Trade Dress.

50. Defendant's acts of willful infringement of Plaintiff's rights in the L'Amore Trade Dress have caused and, unless restrained, will continue to cause great and irreparable injury to Plaintiff, Plaintiff's business, and to the goodwill and reputation of Plaintiff in an amount that cannot be ascertained at this time, leaving Plaintiff no adequate remedy at law.

51. Defendant's acts are the proximate cause of such injury and damage.

52. By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendant, and anyone acting in concert with Defendant, to restrain further

22

acts of infringement of Plaintiff's rights and, after trial, to recover any damages proven to have been caused by reason of Defendant's aforesaid acts of infringement and any enhanced damages justified by the willful and intentional nature of such acts.

**COUNT FIVE**

**Federal Unfair Competition with Respect to the L'Amore Trade Dress**
**(15 U.S.C. § 1125)**

53.  Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54.  By its knowing and intentional unauthorized imitation, adoption, and use of Plaintiff's L'Amore Trade Dress and/or trade dress which is confusingly similar to Plaintiff's L'Amore Trade Dress in association with Defendant's goods and services through its Viejas Commercial, Defendant has and continues to falsely designate its goods and services as being derived or affiliated with those of the Plaintiff.

55.  Defendant's use of the L'Amore Trade Dress is likely to cause relevant consumers to mistakenly believe that Defendant has an affiliation with Plaintiff, that Defendant's business is sponsored or approved by Plaintiff, or that Defendant is otherwise associated with or has obtained permission from

23

Plaintiff to use the L'Amore Trade Dress in connection with the sale of Defendant's goods and services.

56. By engaging in the unauthorized activities described above, Defendant has made, and continues to make, false, deceptive, and misleading statements constituting false representations and false advertising made in connection with the sale of goods or services distributed in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Furthermore, in view of the notices provided to Defendant by the acts of Plaintiff, such activities were, and remain, willful and intentional.

57. Defendant's willful and intentional acts of unfair competition, false advertising, and false designation of origin, have caused and are causing great and irreparable injury and damage to Plaintiff's business and its goodwill and reputation in an amount that cannot be ascertained at this time and, unless preliminarily and permanently restrained, will cause further irreparable injury and damage, leaving Plaintiff with no adequate remedy at law.

58. Defendant's acts are the proximate cause of such injury and damage.

59. By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendant, and anyone acting in

24

concert with Defendant, to restrain further acts of unfair competition, false advertising, and false designation of origin and, after trial, to recover any damages proven to have been caused by reason of Defendant's aforesaid acts, and to recover enhanced damages based on Defendant's willful, intentional, and/or grossly negligent acts.

## COUNT SIX

### Unfair Competition with Respect to the L'Amore Trade Dress (Cal. Bus. & Prof. Code § 17200)

60. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61. Through its unauthorized use of the L'Amore Trade Dress, as well as by continuing to engage in a willful and concerted effort to trade on Plaintiff's goodwill by copying and/or imitating Plaintiff's L'Amore Trade Dress, Defendant has engaged in unlawful and unfair business acts or practices in violation of Cal. Bus. & Prof. Code § 17200.

62. Defendant's willful and intentional violation of Cal. Bus. & Prof. Code § 17200 has caused and is causing great and irreparable injury and damage to Plaintiff's business and its goodwill and reputation in an amount that cannot be ascertained at this time and, unless preliminarily and permanently

25

restrained, will cause further irreparable injury and damage, leaving Plaintiff with no adequate remedy at law.

63. Defendant's acts are the proximate cause of such injury and damage.

64. By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendant, and anyone acting in concert with Defendant, to restrain further violation of Cal. Bus. & Prof. Code § 17200.

## COUNT SEVEN

### Copyright Infringement of the L'Amore #1 Commercial

65. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66. Plaintiff's L'Amore #1 Commercial is an original, independently created, and creative work and is copyrightable under United States law.

67. Plaintiff is the sole owner of the copyright in the L'Amore #1 Commercial and has applied and paid the fee for registration of the L'Amore #1 Commercial with the United States Copyright Office.

68. Plaintiff's L'Amore #1 Commercial was widely disseminated prior to Defendant's creation of the Viejas

26

Commercial such that Defendant had access to the L'Amore #1 Commercial at the time it created the Viejas Commercial.

69. Defendant's Viejas Commercial contains specific similarities to the L'Amore Expressive Elements of Plaintiff's L'Amore #1 Commercial including similarities in plot, themes, dialogue, mood, setting, pace, characters, and sequence of events; has substantially the same total concept and feel as the L'Amore #1 Commercial; and is accordingly substantially similar to the L'Amore #1 Commercial.

70. Because of Defendant's access to the L'Amore #1 Commercial and because of the substantial similarity between Defendant's Viejas Commercial and the L'Amore #1 Commercial, Defendant must have and did copy the L'Amore #1 Commercial and therefore has infringed and continues to infringe Plaintiff's copyright in the L'Amore #1 Commercial.

71. Defendant was, or should have been, aware of Plaintiff's copyright in the L'Amore #1 Commercial. Defendant's acts aforesaid, including its unauthorized copying of the L'Amore #1 Commercial through its creation of the Viejas Commercial, constitutes willful infringement of Plaintiff's copyright in the L'Amore #1 Commercial.

72. Defendant's willful and intentional acts of infringement have caused and are causing great and irreparable

27

injury and damage to Plaintiff's business in an amount that cannot be ascertained at this time and, unless preliminarily and permanently restrained, will cause further irreparable injury and damage, leaving Plaintiff with no adequate remedy at law.

73. Defendant's acts are the proximate cause of such injury and damage.

74. By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendant, and anyone acting in concert with Defendant, to restrain further acts of infringement and, after trial, to recover any damages proven to have been caused by reason of Defendant's aforesaid acts, and to recover enhanced damages based on Defendant's willful, intentional, and/or grossly negligent acts.

## COUNT EIGHT

### Copyright Infringement of the L'Amore #2 Commercial

75. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76. Plaintiff's L'Amore #2 Commercial is an original, independently created, and creative work and is copyrightable under United States law.

77. Plaintiff is the sole owner of the copyright in the L'Amore #2 Commercial and has applied for and paid the fee for

registration of the L'Amore #2 Commercial with the United States Copyright Office.

78. Plaintiff's L'Amore #2 Commercial was widely disseminated prior to Defendant's creation of the Viejas Commercial such that Defendant had access to the L'Amore #2 Commercial at the time it created the Viejas Commercial.

79. Defendant's Viejas Commercial contains specific similarities to the L'Amore Expressive Elements of Plaintiff's L'Amore #2 Commercial including similarities in plot, themes, dialogue, mood, setting, pace, characters, and sequence of events; has substantially the same total concept and feel as the L'Amore #2 Commercial; and is accordingly substantially similar to the L'Amore #2 Commercial.

80. Because of Defendant's access to the L'Amore #2 Commercial and because of the substantial similarity between Defendant's Viejas Commercial and the L'Amore #2 Commercial, Defendant must have and did copy the L'Amore #2 Commercial and therefore has infringed and continues to infringe Plaintiff's copyright in the L'Amore #2 Commercial.

81. Defendant was, or should have been, aware of Plaintiff's copyright in the L'Amore #2 Commercial. Defendant's acts aforesaid, including its unauthorized copying of the

29

L'Amore #2 Commercial, constitutes willful infringement of Plaintiff's copyright in the L'Amore #2 Commercial.

82. Defendant's willful and intentional acts of infringement have caused and are causing great and irreparable injury and damage to Plaintiff's business in an amount that cannot be ascertained at this time and, unless preliminarily and permanently restrained, will cause further irreparable injury and damage, leaving Plaintiff with no adequate remedy at law.

83. Defendant's acts are the proximate cause of such injury and damage.

84. By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendant, and anyone acting in concert with Defendant, to restrain further acts of infringement and, after trial, to recover any damages proven to have been caused by reason of Defendant's aforesaid acts, and to recover enhanced damages based on Defendant's willful, intentional, and/or grossly negligent acts.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff SPCDG respectfully prays for the following relief:

A. A preliminary and permanent nationwide injunction enjoining Defendant, its employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries

and assigns, and all those in concert or participation with any of them, from:

    a.   imitating, copying, using, reproducing, registering, attempting to register and/or displaying the mark and designation PINCH YOURSELF, or any mark or designation which colorably imitates or is confusingly similar to this mark and designations, including, without limitation, PINCH YOURSELF alone or in combination with any other term(s), word(s), name(s), logo(s), symbol(s), device(s), designation(s) and/or design(s) in any manner whatsoever;

    b.   using any other false description or representation or any other things calculated or likely to cause confusion, deception, or mistake in the marketplace with regard to Plaintiff's PINCH YOURSELF mark;

    c.   airing its Viejas Commercial, or any other commercial that infringes the L'Amore Trade Dress or Plaintiff's copyrights in the L'Amore Commercials;

    d.   airing any commercial calculated or likely to cause confusion, deception, or mistake in the marketplace with regard to the L'Amore Commercials; and

    e.   using any other false description or representation or any other things calculated or likely to

cause confusion, deception, or mistake in the marketplace with regard to the L'Amore Trade Dress;

B. An order directing Defendant to deliver up for impoundment and destruction all materials and matter in its possession or custody or under its control that infringe Plaintiff's trademark, trade dress, and copyrights, including, without limitation, all of Defendant's marketing materials bearing the PINCH YOURSELF mark and all copies of Defendant's Viejas Commercial;

C. An order directing that Defendant file with the Court and serve upon counsel for Plaintiff within thirty (30) days after the entry of such order or judgment, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction(s);

D. An award of damages, in an amount to be proven at trial, for the Defendant's infringement of Plaintiff's following intellectual property rights, the damages including Plaintiff's actual damages, Defendant's profits attributable to the infringement, Plaintiff's costs including a reasonable attorneys' fee, and any enhancements the Court finds reasonable:

    a. The PINCH YOURSELF mark;

    b. The L'Amore Trade Dress; and

    c. The copyright of the L'Amore Commercials;

32

E.   An  award  of  damages  to  compensate  for  Defendant's unfair competition in an amount to be proven at trial, including Plaintiff's actual damages and Defendant's profits attributable to the unfair competition;

F.   An  order  awarding  Plaintiff  punitive  damages  on account of Defendant's willful violations of law;

G.   An  order  awarding  Plaintiff  prejudgment  and  post judgment interest;

H.   An order for corrective advertising in a form, manner, and frequency that is acceptable to Plaintiff and the Court; and

I.   All  other  relief,  in  law  or  in  equity,  to  which Plaintiff may be entitled, or which the Court deems just and proper.

                         Respectfully,

                         Vista IP Law Group LLP

August 29, 2011      by:  s/Neal M. Cohen
                         Attorneys for Plaintiff
                              SAN PASQUAL CASINO DEVELOPMENT
                              GROUP INC., an enterprise fund of
                              the San Pasqual Band of Mission
                              Indians, a Federally-Recognized
                              Indian Tribe

33

**JURY DEMAND**

Pursuant to F.R.Civ.P. Rule 38(b), and L.R. 38.1, Plaintiff demands a jury trial on all issues triable to a jury.

Respectfully,

Vista IP Law Group LLP

August 29, 2011       by:  s/Neal M. Cohen
                          Attorneys for Plaintiff
                          SAN PASQUAL CASINO DEVELOPMENT
                          GROUP INC., an enterprise fund of
                          the San Pasqual Band of Mission
                          Indians, a Federally-Recognized
                          Indian Tribe

34

⊛JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

SAN PASQUAL CASINO DEVELOPMENT GROUP INC., an enterprise fund of the San Pasqual Band of Mission Indians... ⊞

## DEFENDANTS

VIEJAS BAND OF KUMEYAAY INDIANS, a Federally-Recognized Indian Tribe d/b/a Viejas Casino ⊞

**(b)** County of Residence of First Listed Plaintiff   San Diego, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**'11 CV 1983 JAH POR**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Neal M. Cohen  949.724.1849
Vista IP Law Group LLP, 2040 Main St., #710  Irvine, CA  92614 ⊞

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☒ 3  Federal Question
      (U.S. Government Not a Party)

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC 1125
Brief description of cause:
Trademark Infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
08/29/2011

SIGNATURE OF ATTORNEY OF RECORD
s/Neal M. Cohen

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____